UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EMERY P.,

    Plaintiff,

v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

    Defendant.

Civil Action No.
21-cv-3147-MAU

## MEMORANDUM OPINION

Plaintiff Emery P. ("Plaintiff")[1] filed this case challenging the final decision of the Acting Commissioner of Social Security, Dr. Kilolo Kijakazi ("Defendant" or "the Commissioner"),[2] denying his claim for Social Security Disability Insurance Benefits ("SSDIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3). Plaintiff moves this Court to reverse the Commissioner's decision, or in the alternative, remand to the Social Security Administration ("SSA") for further proceedings. The Commissioner argues that the Administrative Law Judge's ("ALJ") decision should be affirmed.

---

[1] Plaintiff's name has been partially redacted in accordance with the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum from Hon. Wm. Terrell Hodges, Chair, Comm. on Ct. Admin. & Case Mgmt. to Chief Judges of the U.S. Cts. of Appeals, Chief Judges of the U.S. Cts., Clerks of the U.S. Cts. of Appeals, and Clerks of the U.S. Dist. Cts. (May 1, 2018), *available at* https://www.uscourts.gov/sites/default/files/18-ap-c-suggestion_cacm_0.pdf (last visited September 12, 2023).

[2] Pursuant to Federal Rule of Civil Procedure 25(d), the current Defendant has been substituted for her predecessor. *See* Fed. R. Civ. P. 25(d).

1

Having reviewed the Administrative Record,[3] the Parties' briefs, and the relevant law, this Court will **GRANT** Plaintiff's Motion (ECF No. 15), **DENY** Defendant's Motion (ECF No. 17), and remand this case to the SSA for further proceedings consistent with this Memorandum Opinion.

## BACKGROUND

### A. The Social Security Act

To qualify for benefits under the Social Security Act ("the Act"), the Commissioner must find that that a claimant has a "disability." *See* 42 U.S.C. §§ 423(a)(1)(E), 1382a(1). The Act defines a "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A).

To assess a claimant's alleged disability, the Commissioner uses a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The ALJ must determine whether: (1) the claimant is currently "engaged in substantial gainful activity"; (2) the claimant has a "medically severe impairment or impairments"; (3) the claimant's impairments are medically equivalent to one of the impairments listed in the appendix of the relevant disability regulation; (4) the claimant, because of the impairments, is incapable of meeting the physical and mental demands of his past work; and (5) the claimant, in light of his age, education, work experience, and Residual Functional Capacity ("RFC"), is capable of performing other work in the national economy. *See id.*; *see also Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004).

---

[3]   Citations to the Administrative Record, ECF No. 9, are referred to as "AR." The Court will cite to the consecutive page numbers provided in the lower right-hand corner of each page of the AR.

The RFC is "what an individual can still do despite his or her limitations." S.S.R. 96–8p, 1996 WL 374184, at *2. Determining a claimant's RFC requires an assessment "of the extent to which an individual's medically determinable impairment(s), including any related symptoms . . . may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical or mental activities." *Id.* The RFC reflects an individual's "*maximum remaining ability to do sustained work activities.*" *Id.* (emphasis added).

At step four, the claimant must compare the RFC assessment with the physical and mental demands of his past relevant work and demonstrate that his impairments prevent him from performing that work. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step five, the burden shifts to the Commissioner to identify specific jobs available in the national economy that the claimant can perform in light of his age, education, work experience, and RFC. *See id.*; *see also Callahan v. Astrue*, 786 F. Supp. 2d 87, 89 (D.D.C. 2011). In making this determination, the ALJ may call upon a vocational expert ("VE") to testify at the administrative hearing. *Callahan*, 786 F. Supp. 2d. at 90.

### B. Plaintiff's Disability Claim and Procedural History

On July 15, 2019, Plaintiff filed for SSDIB and SSI benefits. AR at 15. Plaintiff was born on September 26, 1967, and at the time of his application, was fifty-one years old. *Id.* at 61. Plaintiff's claims were based on physical impairments, including ankle and back pain, and degenerative disc disease of the lumbar spine. *Id.* at 90-91.

The Commissioner denied Plaintiff's initial claims on September 25, 2019, and again upon reconsideration on December 10, 2019. *Id.* at 15, 110. On December 19, 2019, Plaintiff filed a written request for an administrative hearing, which the ALJ held on October 20, 2020. *Id.* at 15, 133.

### C. The Administrative Hearing

At the hearing, the ALJ heard testimony from Plaintiff and a vocational expert. *Id.* at 32. Plaintiff testified that he previously worked security at a bowling alley and a bar. *Id.* at 41. In addition to providing security, Plaintiff's responsibilities included setting up chairs, carrying boxes of liquor to the bar, and cleaning off tables. *Id.* at 41-42. As to his living arrangements, Plaintiff testified that he lived with his sister on her pull-out couch. Plaintiff stated that he needs his sister to help him get around the house and do chores such as getting groceries. *Id.* at 54.

Plaintiff elaborated on his physical limitations, stating that he requires a crutch to stand and keep his balance. *Id.* at 52. Plaintiff testified that he cannot sit or stand for "too long," even while using a crutch, before his leg gets numb or before pain shoots from his back to his left leg. *Id.* at 52, 55. Plaintiff noted that his daily routine is largely sedentary. *Id.* at 54-56. He testified that, because of his pain, he hardly gets out of the house. *Id.* at 55. According to Plaintiff, he generally remains indoors, attempts to do his prescribed back exercises to the extent he is able, and on rare occasions, goes to the park. *Id.* He further explained that even small tasks such as bending over to tie his shoes sometimes presents a challenge. *Id.* at 56. When asked how long he could stand at home without the crutch, Plaintiff testified that he could stand for about fifteen to twenty minutes. *Id.* at 52, 58, 59.

Plaintiff then described his treatment. *Id.* at 52. He stated that he goes to pain management for his back. *Id.* at 53. Plaintiff testified that over the course of his treatment, he received three cortisone injections for his pain. *Id.* Plaintiff explained that the relief the cortisone shots provided was temporary, as the third injection wore off after a couple of days. *Id.* In terms of his treatment for his left ankle, Plaintiff testified that he sees a podiatrist who prescribed a custom brace which Plaintiff wears daily. *Id.* at 52.

The ALJ then elicited testimony from the vocational expert, Irene Montgomery. *Id.* at 44. The ALJ asked Montgomery a list of hypothetical questions about an individual with the same age, education, and past relevant work experience as Plaintiff. *Id*. at 44-47. The ALJ asked Montgomery if the hypothetical individual with the RFC the ALJ formulated could perform Plaintiff's past job as a security guard. *Id.* at 44. Montgomery testified that the individual could not perform Plaintiff's past relevant work. *Id.* at 45. Montgomery stated, however, that if the individual could lift up to ten pounds one-handed, this hypothetical individual could perform three light, unskilled jobs: a cashier, collator, or inspector. *Id.* at 45-56. Finally, Montgomery testified that the individual could not be regularly off task more than ten percent of the time and could not miss more than one day of work per month. *Id.* at 45, 48.

**D. The ALJ's Decision**

On April 7, 2021, the ALJ issued his decision, finding that Plaintiff was not disabled. *Id.* at 24. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 26, 2019, the alleged onset date of his disability. *Id.* at 17. At step two, the ALJ found that Plaintiff had the following severe impairments: (1) degenerative disc disease of the lumbar spine; (2) L5-S1 vacuum disc; (3) left knee tibial plateau fracture; (4) right knee degenerative joint disease; (5) left ankle sprain; (6) diabetes mellitus; and (7) obesity. *Id.* at 18.

At step three, the ALJ found that Plaintiff's impairment or combination of impairments did not meet or medically equal one of the Listings. *Id.* The ALJ specifically considered Listings 1.15, 1.18, and 11. *Id.* at 19. Under the Revised Listing 1.15 (Musculoskeletal Disorders) and Listing 1.18 (Abnormality of a Major Joint), the ALJ found that Plaintiff's impairments did not reach the level of severity required under the Listings, noting that although Plaintiff ambulated with an assistive device, Plaintiff maintained 5/5 muscle strength in all other muscle groups besides

his left knee. *Id.* at 18-19. Under Listing 11.00 (Neurological Impairments),[4] the ALJ determined that Plaintiff did not have peripheral neuropathy with disorganization of motor function in two extremities. *Id.* The ALJ also found that Plaintiff's obesity did not qualify as a severe impairment because it is no longer a listed impairment in the regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 19. The ALJ considered, however, Plaintiff's obesity in relation to and in combination with Plaintiff's other impairments. *Id.*

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work and had the RFC to perform light work with the following limitations:

> [Plaintiff] can sit, stand, or work for about six hours, but can never climb ladders, ropes, or scaffolds. He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He must be permitted to alternate between standing and sitting as needed and change positions every thirty minutes, such that sitting, standing, or walking would total four hours in an eight-hour workday. Lastly, Plaintiff would also require the use of a cane or crutch for walking, but not for standing, and he would have the ability to use his free hand to carry objects weighing 10 pounds or less.

*Id.*

At step five, the ALJ found that, after considering Plaintiff's age, education, work experience, and RFC, there were jobs that Plaintiff could perform in the national economy, such as collator, mail clerk, and inspector. *Id.* at 23. In assessing Plaintiff's RFC, the ALJ considered the objective medical evidence of record, prior administrative medical findings, Plaintiff's daily activities, the hearing testimony, and medical opinions from the following: Drs. Jaqueline McMorris, Lisa Venkataraman, Richard McClendon, James Tozzi, and Certified Physician Assistant Aisha Haram. *Id.* at 21-22.

---

[4] Because there is no longer a specific listing for Diabetes Mellitus, Listing 9.00B5(a)(ii) directs the ALJ to evaluate diabetic peripheral and sensory neuropathy under Listing 11.00. AR at 19.

Plaintiff appealed the ALJ's decision on April 24, 2021. *Id.* at 189-190. The Appeals Council denied Plaintiff's appeal on September 29, 2021. *Id.*

## LEGAL STANDARD

A federal district court has jurisdiction over a challenge to the final decision of the Commissioner. 42 U.S.C. § 405(g). A reviewing court must affirm the Commissioner's decision if it is based on substantial evidence in the record and the correct application of the relevant legal standards. *Id.*; *Butler*, 353 F.3d at 999; *Smith v. Bowen*, 826 F.2d 1120, 1121 (D.C. Cir. 1987).

Substantial evidence is "'more than mere scintilla'" and means only "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Ultimately, substantial evidence is a "low bar," *La. Pub. Serv. Comm'n v. FERC*, 20 F.4th 1, 7 (D.C. Cir. 2021), and "requires considerable deference to the decision rendered by the ALJ." *Crosson v. Shalala*, 907 F. Supp. 1, 3 (D.D.C. 1995). Even so, although there is no requirement that the ALJ refer to every piece of evidence in his decision, the ALJ is "prohibited from ignoring an entire line of evidence that supports a disability finding." *Goodman v. Colvin*, 233 F. Supp. 3d 88, 109 (D.D.C. 2016) (internal citations and quotation marks omitted).

On review, this Court may not reweigh the evidence. *Butler*, 353 F.3d at 999. Instead, it is the Court's role to "carefully scrutinize the entire record to ensure that the Commissioner, through the ALJ, has both analyzed all of the evidence available and has sufficiently explained his/her reasoning and the weights given to the facts." *Pinkney v. Astrue*, 675 F. Supp. 2d 9, 14 (D.D.C. 2009). Moreover, the Court's job is to "consider the grounds actually proffered by the ALJ" rather than to make those determinations for itself. *See Ward v. Berryhill*, 246 F. Supp. 3d 202, 210 (D.D.C. 2017) (quoting *Settles v. Colvin*, 121 F. Supp. 3d 163, 167-70 (D.D.C. 2015)). In performing this role, the Court must ". . . be mindful of the harmless-error rule. Consequently,

7

even if [the Court] perceive[s] error," it must "affirm the Commission's decision unless the error is prejudicial." *Saunders v. Kijakazi*, 6 F.4th 1, 5 (D.C. Cir. 2021) (internal citation omitted). "'[P]laintiff bears the burden of demonstrating that the Commissioner's decision [is] not based on substantial evidence or that incorrect legal standards were applied.'" *Settles*, 121 F. Supp. 3d at 169 (quoting *Muldrow v. Astrue*, No. 11-1385, 2012 WL 2877697, at *6 (D.D.C. July 11, 2012)).

## DISCUSSION

Plaintiff makes two arguments in support of his motion to reverse the ALJ's decision, both assigning error to the ALJ's RFC assessment. First, Plaintiff argues that the ALJ erred in evaluating Plaintiff's subjective symptoms. ECF No. 16 at 10-17. Second, Plaintiff argues that the ALJ failed to properly weigh Plaintiff's primary care physician's opinion. *Id.* at 16-20. The Commissioner responds that substantial evidence supports the ALJ's decision and that the ALJ properly considered both Plaintiff's subjective complaints and the opinion of Plaintiff's treating physician. ECF No. 18 at 10-18.

### I. The ALJ Erred in Evaluating Plaintiff's Subjective Complaints.

Plaintiff argues that, in evaluating Plaintiff's subjective complaints, the ALJ ignored relevant contradictory evidence, understated Plaintiff's limitations in everyday activities, and mischaracterized the efficacy of Plaintiff's treatment. ECF No. 16 at 12, 14-16. The Commissioner responds that the ALJ accurately considered the entire record and relied on substantial evidence to support his evaluation of Plaintiff's subjective complaints. ECF No. 18 at 11-13. The Court agrees with Plaintiff.

ALJs are required to follow a two-step process when evaluating the intensity and persistence of a claimant's symptoms to determine the extent to which such symptoms limit the claimant's ability to work. 20 C.F.R. § 404.1529(c)(1). First, the ALJ must determine whether a claimant's symptoms could be reasonably expected to arise from his alleged impairments. *Troy v.*

*Colvin*, 266 F. Supp. 3d 288, 295 (D.D.C. 2017).  Second, the ALJ "evaluate[s] the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." *Id.*  The second step requires the ALJ to evaluate "all available evidence."  *See Butler*, 353 F.3d at 1004 (defining "all the available evidence" as claimant's statements, medical history, laboratory findings, objective medical evidence of pain, opinions of treating physicians, and other evidence that would speak to severity of pain).  An ALJ "must 'note[] the contradictory evidence in the record and 'explain [] the weight he has given to obviously probative exhibits.'"  *Williams v. Saul*, No. 17-2576, 2020 WL 2464519, at *4 (D.D.C. 2020) (quoting *Williams v. Shalala*, 997 F.2d 1494, 1499 (D.C. Cir. 1993)).

A reviewing court must give deference to the ALJ's credibility determinations and intervene only where an ALJ "fails to articulate a rational explanation for his or her finding[s]." *Grant v. Astrue*, 857 F. Supp. 2d 146, 156 (D.D.C. 2012); *Lane-Rauth v Barnhart*, 437 F. Supp. 2d 63, 67 ("The ALJ must build an 'accurate and logical bridge from the evidence to [his] conclusion' so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review.") (quoting *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002)).  "While an ALJ may not reject a claimant's statements about pain 'solely because they are not substantiated by objective medical evidence,' the ALJ may consider 'whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence.'" *McCormick v. Saul*, No. 18-cv-1704, 2021 WL 2634732, at *9 (D.D.C. June 25, 2021) (quoting *Butler*, 353 F.3d at 1004-05)).

    A.    *The ALJ failed to consider the entire record in support of his RFC.*

In evaluating Plaintiff's subjective complaints, the ALJ determined that although Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged

symptoms [. . .] the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR at 20. The ALJ explained his findings as follows:

> Physical examinations of the claimant show that he had a full range of motion in his bilateral knees (3F/11), and that his spin was non-tender (3F/11). Strength in the claimant's left knee was reduced at 4/5, while the claimant maintained 5/5 muscle strength in all other muscle groups (9F/2). However, other physical examinations did reveal swelling of the left ankle and bilateral knees, and antalgic gait, and reduced muscle strength in the lower left extremity (3F/11, 2F/25, 9F/2). Straight leg raise testing was also positive on the left (9F/11). Imaging of the claimant's left ankle revealed mild soft tissue swelling (8F/3). Similarly, an MRI of the claimant's lumber spine revealed degenerative changes (8F/7-8).
>
> The claimant's severe impairments also include diabetes mellitus. (11F/5, Hearing). The claimant's prescription regimen included Metformin. (3F/16). Physical examinations of the claimant generally showed that his diabetes was well controlled, with blood sugars between 130- 150. (9F/9, 9F/21). The claimant's A1c was also generally within an acceptable range. (11F/62). However, other physical examinations did reveal that the claimant's A1c was above goal. (5F/15, 7F/31).

*Id.* at 20-21.

The ALJ's reasoning reads as a recitation of the medical evidence devoid of analysis. Furthermore, as Plaintiff noted, the ALJ fails to grapple with contradictory record evidence. ECF No. 16 at 13-19. For example, the ALJ cites to a report that the Plaintiff had full range of motion in his knees and other muscle groups; however, in the next sentence, the ALJ notes that there was swelling and reduced muscle strength in those same groups. AR at 20-21. The ALJ then notes that Plaintiff's spine was non-tender, only to immediately reference degenerative changes in his spine. *Id.* The ALJ does not grapple with these apparent contradictions or provide any insight into how this factored into Plaintiff's RFC. The ALJ also appears to rely mainly upon medical findings relating to Plaintiff's knee in fashioning his RFC:

> Physical examinations of the claimant show that he *had a full range of motion in his bilateral knees* (3F/11), and that his spine was non-tender (3F/11). Strength in the claimant's left knee were reduced at 4/5, while the claimant maintained 5/5

>  muscle strength in all other muscle groups.  (9F/2).  However, other physical examinations did reveal swelling of the left ankle and *bilateral knees*, and antalgic gait, and reduced muscle strength in the lower left extremity.  (3F/11, 2F/25, 9F/2).  Straight leg raise testing was also positive on the left.  (9F/11).  An imaging study of the claimant's right knee showed moderate degenerative joint disease.  (3F/9).

*Id.* at 20 (emphasis added).

Plaintiff's knee, however, is only one component of Plaintiff's physical complaints.  *See* ECF No. 16 at 15 (arguing that Plaintiff's back, leg, and ankle constitute the bulk of Plaintiff's claim).  The ALJ's reliance on improvements to Plaintiff's knee reflects an incomplete assessment of the record.  *See id.* (noting medical findings the ALJ did not address in his decision).  In fact, the record reflects that Plaintiff's symptoms appear to be more significant and limiting than the ALJ has assessed.  *See e.g.*, AR at 577-78 (medical evaluation noting "significant exacerbation of pain with extension and left lean" and classifying Plaintiff's pain as "Throbbing, Aching, Shooting").  Outside of noting "mild swelling" in Plaintiff's ankle or that Plaintiff's spine was "non-tender," *id.* at 20, the ALJ fails to weigh or consider other material evidence relating to Plaintiff's ankle and back pain.  *See id.* at 322-33 (stating Plaintiff's plantarflexion was reduced to 3/5, inversion and eversion ere to 3+/5, and dorsiflexion to 4/5); *see also id.* at 598-99 ("There is increased pain to palpation along left lateral ankle ligaments . . . There is decreased dorsiflexion to the left ankle compared to the right.").

Due to the ALJ's failure to analyze or address contradictory probative evidence, the Court can neither determine whether the ALJ considered the entirety of the record nor discern the weight he gave to particular evidence.  *Grant v. Kijakazi*, 619 F. Supp. 3d 128, 139 (D.D.C. 2022) (quoting *Turner v. Astrue*, 710 F. Supp. 2d 95, 105 (D.D.C. 2010)) ("[A]n ALJ cannot merely disregard evidence which does not support [her] conclusion."); *see also Lane-Rauth,* 437 F. Supp. 2d at 67 ("While the ALJ need not articulate his reasons for rejecting every piece of evidence, he must at least minimally discuss a claimant's evidence that contradicts the Commissioner's position.")

(citations omitted). In this case, he erroneously simply listed medical evidence, without more. *Lane-Rauth,* 437 F. Supp. 2d at 67 ("Because the ALJ simply listed all of the evidence without clearly explaining which particular pieces of evidence led him to his conclusion, there is no logical bridge, and no thorough discussion and analysis.") (internal quotation marks and citations omitted).

In attempting to justify the ALJ's decision, the Commissioner cites to record evidence that the ALJ failed to include in his decision. ECF No. 18 at 12. For example, the Commissioner cites to an examination with Dr. Berkenblit indicating that Plaintiff had nearly full range of motion in both his knee and ankle. *Id.* (citing AR at 396-98). The ALJ, however, did not include reference to this examination in his decision. *Id.* Although this examination and findings may well have been material to the ALJ's determination, the Court can only consider the grounds the agency proffered. *See Clark v. Astrue,* 826 F. Supp. 2d 13, 20 (D.D.C. 2011). For all these reasons, remand on this issue is warranted. *See Brown v. Bowen*, 794 F.2d 703, 708 (D.C. Cir. 1986) ("The judiciary can scarcely perform its assigned review function, limited though it is, without some indication not only of what evidence was credited, but also whether other evidence was rejected rather than simply ignored.").

> B. *The ALJ misstated Plaintiff's participation in everyday activities and the relief his treatment provided.*

In discrediting Plaintiff's subjective complaints so as to fashion an RFC, the ALJ relied upon Plaintiff's ability to "perform largely independent activities, including the ability to prepare simple meals, at-home exercise, and spending time at the park." *Id.* at 21. Additionally, the ALJ noted that Plaintiff's cortisone injections were "greatly" effective at treating his back pain. *Id.* at 21.

These characterizations are at odds with the record, as the ALJ left out significant contextual details. For example, Plaintiff testified that *he would have to sit down* when preparing a simple meal. *Id.* at 58. Further, Plaintiff's "exercising at home" entailed physical therapy exercises his doctor recommended. *Id.* at 54. Moreover, Plaintiff only *rarely* went to the park when it was a "good day" after he got a "good night's sleep." *Id.* As Plaintiff testified, he could only stand for fifteen minutes, and "sometimes, it's a task just for [him] to bend over to try and tie [his] shoe." *Id.* at 56. The ALJ's failure to explain the extent to which Plaintiff is capable of performing certain activities reflects a misstatement of the record and warrants remand. *See Jackson v. Barnhart*, 271 F. Supp. 2d 30, 37 (D.D.C. Apr. 2, 2002) (remanding where the ALJ "ignored the *limited* fashion the plaintiff engages in some of the activities she described.") (emphasis in original); *Stubbs v. Saul*, No. 18-cv-1457, 2020 WL 1893173, at *6 (D.D.C. Mar. 23, 2020) (reversing an ALJ's decision where the ALJ mischaracterized Plaintiff's everyday activities).

The ALJ's discussion of the efficacy of Plaintiff's medical treatment is also inconsistent with the record. Although the ALJ noted that Plaintiff's cortisone shots "greatly" mitigate his symptoms, the ALJ failed to note that the efficacy of the cortisone shots diminished over time. AR at 53. Both Plaintiff's testimony and the medical record reflect that the cortisone shots provided only temporary relief. *See id.* at 579, 582, 584, 585, 605. From February to July of 2020, Plaintiff received three cortisone injections. *Id.* Although his first injection provided relief for up to two weeks, his third injection provided relief for only a few days. *See id.* at 582, 585 ("He is still having back pain for which he is receiving injections for. They relieve his pain for a few days but not thereafter."). The ALJ failed to acknowledge the injections' waning effectiveness and further failed to explain why he did not consider this information in his analysis. *Id.* at 21.

In support of the ALJ's decision, the Commissioner again cites to evidence that the ALJ did not cite. *Id.* at 21; ECF No. 18 at 13 (citing to a telephonic follow-up billing appointment and noting that Plaintiff indicated that he had no complaints). Specifically, the Commissioner argues, "in September 2020, [Plaintiff] was evidently returning to work as he filled out some forms for his job. Thus, the ALJ correctly observed that Plaintiff's back injections reduced his back pain." ECF No. 18 at 13. The Commissioner's argument misses the mark. Plaintiff did not make these statements to a health care provider, but rather to an administrator who called to discuss his medical bills. *Id.* at 613-14. This does not constitute a medical opinion. Moreover, reliance on this evidence would constitute a *post hoc* rationalization that the Court cannot consider. *Settles*, 121 F. Supp. 3d at 170 ("Moreover, with regard to an ALJ's reasoning 'the Court may only consider the grounds proffered by the agency in its decision for *post hoc* rationalizations do not suffice.'") (quoting *Espinosa v. Colvin*, 953 F. Supp. 2d 25, 33 (D.D.C. 2013)). As noted above, the record suggests that Plaintiff's limitations are more significant than the ALJ reflected in his decision. Because the ALJ failed to consider or, at a minimum, failed to explain why he did not credit this evidence, this Court remands the ALJ's RFC determination for further proceedings. *See Jackson*, 271 F. Supp. 2d at 37 (remanding an ALJ's RFC determination due to the ALJ's failure to conduct a proper evaluation of all relevant evidence in the record).

## II. The ALJ Failed to Properly Evaluate Dr. McClendon's Opinion.

Plaintiff also argues that the ALJ did not properly consider the opinion of Plaintiff's primary care treating physician, Dr. McClendon. ECF No. 16 at 19. The Commissioner argues that the ALJ properly considered Dr. McClendon's opinion, as the ALJ evaluated the opinion's persuasiveness based on its consistency and supportability with the record. ECF No. 18 at 17. The Court agrees with Plaintiff.

For claims filed after March 27, 2017, ALJs are not required to defer or give specific evidentiary weight to medical opinions from claimants' treating providers. 20 C.F.R. § 404.1520c(a). Before the SSA issued revised regulations in 2017, courts in this Circuit followed the "treating physician rule," which interpreted prior regulations, 20 C.F.R. § 404.1527(d)(2), and required ALJs to give "controlling weight" to physicians' opinions so long as they were consistent with the record. *Butler*, 353 F.3d at 1003. Under the revised regulations, however, an ALJ shall not give specific evidentiary weight to any medical opinion, "including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c. Instead, the ALJ must articulate how persuasive all medical opinions are, according to five factors: (1) supportability, (2) consistency, (3) the medical source's relationship with the claimant, (4) specialization, and (5) "other factors that tend to support or contradict a medical opinion." *Id.* §§ 404.1520c(a), 404.1520c(c)(2) ("The more consistent a medical opinion is with other sources of the claim, the more persuasive it will be."). The most important factors for an ALJ to consider are supportability and consistency. *Id.* § 404.1520c(b)(2); *Minor v. Kijakazi*, No. 20-cv-3577 (ZMF), 2022 WL 17726903, at *8 (D.D.C. Dec. 16, 2022) ("Supportability refers to the extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation. Consistency refers to the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim.") (citations omitted).

An ALJ is required to "provid[e] a sufficient basis for this Court to understand his reasoning when viewing the decision as a whole." *Colter v. Kijakazi*, No. 20-0632 (CKK), 2022 WL 715218, at *11 (D.D.C. Mar. 10, 2022) (citation omitted). In evaluating medical opinions, "the ALJ must explain how he considered and resolved any material inconsistencies," not just state that that an opinion was unpersuasive. *See Cobb v. Astrue*, 770 F. Supp. 2d 165, 171 (D.D.C.

15

2011) (holding the ALJ's RFC insufficient where the assessment of medical opinions contained only broad generalizations rather than analysis and citation to specific facts) (citation omitted).

Here, Plaintiff's treating physician, Dr. McClendon, included the following limitations:

> [Plaintiff] had a moderate limitation in restriction of activities of daily living, a moderate limitation in difficulties in maintaining social functioning, a moderate limitation in difficulties in maintaining concentration, persistence or pace, and a moderate limitation in repeated episodes of decompensation, each of extended duration. [Plaintiff] would be limited to lifting/carrying less than 10 pounds, and could sit, stand, and walk for less than two hours in a workday.

AR at 22.

Based on these limitations, Dr. McClendon found that "[Plaintiff's] impairments prevent him from working." *Id.* The ALJ, in evaluating Dr. McClendon's opinion, determined that this was only partially supported by the record and ultimately unpersuasive. *Id.* The ALJ reasoned as follows:

> Dr. McClendon's opinion is somewhat supported by the provider's treating relationship with the claimant as his primary care physician. This opinion is unpersuasive due to its inconsistency with the longitudinal record. For instance, finding that the claimant would have certain standing and walking restrictions is consistent with evidence showing that the claimant ambulated with a boot or assistive device. (7F/10, 9F/8). However, finding that the claimant would have moderate limitations in the areas identified above is inconsistent with evidence throughout the record showing that the claimant was alert and oriented (3F/11, 9F/10, 11F/4), cooperative with examiners (3F/11), and that he had a normal mood and affect (11F/4). Furthermore, the claimant was able to maintain a conversational exchange with his representative and the undersigned during his telephonic hearing; an indication that he is capable of maintaining concentration, persistence or pace. (Hearing).

*Id.*

Although the ALJ accounts for certain physical limitations in Plaintiff's RFC, such as Plaintiff's need to ambulate with an assistive device, he failed to explain why Dr. McClendon's opinion regarding Plaintiff's further physical limitations was unsupported by the record. *See* 20 C.F.R. § 404.1520c(b)-(c) (requiring ALJs to articulate only how they considered factors

supporting supportability and consistency of opinion evidence). In fact, there is hardly any discussion of the consistency and supportability of Dr. McClendon's opinion as to Plaintiff's physical limitations. AR at 23.

The ALJ provides only one example as to why the opinion is unsupported by the longitudinal record.

> However, finding that the claimant would have moderate limitations in the areas identified above is inconsistent with evidence throughout the record showing that the claimant was alert and oriented (3F/11, 9F/10, 11F/4), cooperative with examiners (3F/11), and that he had a normal mood and affect (11F/4). Furthermore, the claimant was able to maintain a conversational exchange with his representative and the undersigned during his telephonic hearing; an indication that he is capable of maintaining concentration, persistence or pace. (Hearing)

*Id.*

This "explanation," however, inexplicably relies upon Dr. McClendon's opinion of Plaintiff's mood and mental limitations to discount Dr. McClendon's broader findings. *Id.* Plaintiff's mental limitations are not at issue in this case, nor is the ALJ's discussion of them in any way sufficient to discredit Dr. McClendon's findings as to Plaintiff's *physical* limitations. Significantly, Dr. McClendon determined that Plaintiff could walk and stand for less than two hours in a workday. *Id.* at 569. The ALJ's RFC, however, allows for Plaintiff to stand and/or walk for six hours in an eight-hour workday. *Id.* at 19. This does not square with the ALJ's apparent acceptance of Dr. McClendon's findings relating to standing and walking restrictions. *See id.* at 22 ("For instance, finding that the claimant would have certain standing and walking restrictions is consistent with evidence showing that the claimant ambulated with a boot or assistive device."). Without more, the Court cannot untangle how or why the ALJ discounted Dr. McClendon's relevant findings, or more specifically, why the ALJ determined that Plaintiff could sit/stand for longer periods of time. *See Pinkney*, 675 F. Supp. 2d at 18 ("[T]he ALJ has a duty to

explain why they either ignored or rejected contradictory evidence."). Indeed, the ALJ's reliance upon Dr. McClendon's purported erroneous evaluation of Plaintiff's mental limitations to refute Dr. McClendon's broader findings provides, at best, an *illogical* bridge. *See Brown*, 794 F.2d at 708 (An implicit rejection, "without even a breath of explanation" would "violate[ ] the elementary requirement that ALJ's not only state their findings but explicate the reasons for their decision"); *see also Henderson v. Saul*, No. 17-2846, 2019 WL 5549907, at *6 (D.D.C. Oct. 28, 2019) ("A reviewing court should not be left guessing as to how the ALJ evaluated probative material . . . ."). Therefore, remand is warranted on this issue.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Reversal, ECF No. 15, is **GRANTED** and Defendant's Motion for Judgment of Affirmance, ECF No. 17, is **DENIED**. This case is **REMANDED** to the Social Security Administration for further proceedings consistent with this Memorandum Opinion.

**SO ORDERED.**


Date: September 14, 2023

_____
MOXILA A. UPADHYAYA
United States Magistrate Judge